State v. Deshler.

---

THE STATE (ELKIN and VANDERBILT, PROSECUTORS,) *vs.* DESHLER, et. al.

1. An alien has no right to vote at an election held in a school district to alter the district, pursuant to § 10 of the supplement of 1851.

2. Trustees of school districts are municipal officers, and being elected by the people, those who vote for them must have the qualifications required by Art. II. of the constitution of New Jersey.

3. A majority of all the voters of the district are necessary to alter an incorporated district, and the fact, that such a majority consented to the alteration, must be stated in the certificate.

---

*Certiorari* to set aside proceedings in the matter of altering school district.

Argued before Justices ELMER and HAINES, by *Speer* and *Zabriskie*, for the prosecutors and *G. Vroom* and *Whitehead*, for defendants.

*Speer* and *Zabriskie*, for the prosecutors, insisted—

1. Aliens have no right to vote at elections in school districts. The words, taxable inhabitants, are used to designate legal voters, or legal voters actually taxable. Inhabitant is often used in the law as equivalent to citizen. 7 *Mass. R.* 523; *Pat. Rev.* 231; *Rev. Laws* 604; *Ib.* 340: *Pamph. Acts* 1844, *p.* 148, 267; 1848, *p.* 228; 1849, *p.*

224; 1850, *p.* 247; 1849, *p.* 220; 1851, *p.* 24; *Rev. Stat.* 1021, § 5.

The school districts are municipalities, and the officers are officers of the state, who, according to Art. II of the constitution of New Jersey, can only be voted for by citizens.

2. The certificate ought to show on its face that a majority of all the taxable inhabitants living in the district consented to the alteration. This is a special authority, and the power to act must disappear.

*G. Vroom* and *A. Whitehead*, for defendants, insisted—

The words taxable inhabitants mean all inhabitants of the district liable to taxation. All the school laws authorize " inhabitants" to vote at township meetings, and " taxable inhabitants" at district meetings. The design was to allow those to vote in districts who pay the money to support the schools.

The several special acts cited on the other side use the language loosely, and ought not to control the interpretation of the general acts where the phraseology is uniform.

School districts are not municipalities, nor are trustees or teachers officers of the state. They take no oath, and are not so called. They do not differ essentially from the trustees and officers of religious societies.

The act does not require a majority of all the voters of the district to consent; the fair meaning is, a majority of those who attend a regular meeting. How is it to be found out whether a majority of all in the district voted?

ELMER, J. The important question presented in this case is, whether aliens have a right to vote at district meetings held by virtue of the act establishing public schools. The *certiorari* brings up a certificate, made by the township superintendent and the trustees of a school district in the township of North Brunswick, county of Middlesex.

altering the district pursuant to the tenth section of the supplement approved March 14, 1851, (*Pamph.* 270). That section prescribes that an incorporated district shall not be abolished or altered without the consent of a majority of the " taxable inhabitants " of said district. It appears, by the state of the case, that at a regular meeting of the inhabitants of the district, there were 82 votes in the affirmative, and 42 in the negative ; but of 82 affirmative votes, 51 were the votes of persons residing in the district liable to be taxed agreeably to the existing laws, but not citizens of the United States ; so that if the alien residents were not entitled to vote, it is agreed that a majority of the taxable inhabitants did not consent to the alteration.

It is insisted, for the defendants, that the words of the act which authorize taxable inhabitants to vote must be understood according to their plain natural signification, and that, so interpreted, they plainly designate every person domiciled in the district and liable to be taxed of full age, and that the manifest intention was to permit all to vote who were liable to be taxed to support the schools. Undoubtedly it is a correct rule, in construing statutes, to give the words employed their true natural meaning, according to the common use of them when applied to the subject matter. The great and cardinal principle is, to give to every law or other writing the effect intended by the makers ; and since the natural and ordinary meaning of the words used is commonly. what is meant, it is generally safest to abide by that meaning, unless the context shows that something different was intended. In many cases, however, words are used in a technical sense, or a sense only applicable to the particular subject matter, or in a sense indicated, when first used, by a context, which is afterwards dispensed with or modified. In these cases, to give them their natural ordinary signification would defeat, instead of carrying into effect the legislative design.

Wherever positive injustice will be produced, or the principles of our republican government, as set forth in the constitution, will be violated by adhering to the natural meaning of the words, as courts can never suppose that either was intended, they are generally constrained to resort to some other meaning, and to enlarge or restrain the words used, so as best to prevent such results.

The words "taxable inhabitants," it is clear, cannot have their full unrestrained meaning, so as to include every resident liable to be taxed, or they must be held to include not only females, but infants of the most tender age. Some restrictions must, therefore, be put upon them. What it shall be, must depend upon the connection in which they are used and the constitution and statutes relating to the same subject. In those sections of the school laws where the town meetings are empowered to act, the phrase used is inhabitants of the townships; where districts are to act, it is taxable inhabitants. Hence, it is insisted on behalf of the defendants, some different persons must have been meant. Admitting this to be so, we must first ascertain who are meant by inhabitants, and then, whether the prefix " taxable " is meant to enlarge or to restrain the meaning of that word.

Common or public schools were first established by the act of 1829, (*Harr. Com.* 263.) The fourth section of that act authorises the inhabitants of the townships to raise money for the schools at their annual meetings, and the eighth section authorizes the inhabitants of the districts to elect trustees by a plurality of votes, " taxable inhabitants only voting." Subsequent school laws have retained the phraseology, of inhabitants voting at township meetings, and of taxable inhabitants voting at the district meetings. It cannot be doubted, I think, and was indeed hardly denied on the argument, that the legislature meant, by inhabitants of the townships who were to vote for raising school money, such inhabitants as legally consti-

tuted the township meetings, and those only.   The act then in force, passed 1798, (*Rev. Laws* 332) incorporated the inhabitants of the several townships, by that general name, but, in the fifth section, restricted the right to vote to white male citizens of the age of twenty-one years, and otherwise qualified, as is prescribed.   The eighth section of the act establishing common schools was intended, as its language plainly shows, to restrict the voters at district meetings, so as not to include all inhabitants authorized to vote at town meetings, but such only as were taxable, and apparently for the reason, that inhabitants might vote at the township meetings who were not taxable.   However that may have been by the law then in force, it is certain that in 1851, when the law in question was enacted, inhabitants of a township who had resided in the county five years were entitled to vote, whether taxable or not.   By the tax law of that year, revolutionary soldiers, and persons who by reason of age, infirmity, or poverty, were, in the judgment of the commissioners of appeal, unable to pay taxes, were exempt from taxation.

Besides this guide to the meaning of the phrase in question, there are various instances in the statutes of the state where it is so used, that there is no room to doubt it is used as synonymous with legal voters, but none where it is so used as necessarily to include those not voters.   The act of 1844 (*Pamph. Laws* 148), providing for public schools in the township of Camden, authorizes the " taxable inhabitants " to raise money at their annual town meetings.   In this, and several other acts of the same kind, the words " taxable inhabitants " are used as in other acts ; the word inhabitants, alone, is used to designate the inhabitants entitled by law to vote at township meetings.

But whatever might have been meant by the expression before the constitution of 1844, since the adoption of that instrument, I think, we are bound to limit the meaning to such inhabitants as are taxable and as are entitled to

the right of suffrage by the second article. By that article, the persons entitled to vote for all officers who are or hereafter may be elected by the people are declared to be white male citizens. This applies not only to officers whose election is provided for by the constitution, but to all who are or may be elected by virtue of an act of the legislature. Trustees of school districts are such officers, as constables and other township officers are. School districts are only smaller municipalities, and their officers are public officers, and not like the officers of private corporations, as religious societies and similar corporate bodies.

In the case of *The State* v. *City of Cincinnati*, 19 *Ohio R.* 178, the Supreme Court of Ohio held school directors to be municipal officers; but inasmuch as the constitution of that state prescribed only the qualifications of voters for state, county, and township officers, they held that district directors, not coming within that description, might be authorized to be elected by persons not entitled to vote under the constitution. The constitution of this state prescribes the qualifications of voters for all officers elected by virtue of an act of the legislature. By the law now in question, the same persons who elect the trustees, and such only, can vote on the question of abolishing or altering an incorporated district. It must not be understood, however, that it is not in the power of the legislature, by express and explicit provisions, to authorize persons not entitled to vote for trustees to vote on the question of taxing or any matter relating to the schools other than the election of officers. All that is meant to be decided is, that according to the true construction of the laws, as they now are, no inhabitants not authorized to vote for officers are authorized to vote upon other questions. The same designation of persons is used in both cases, without any indication of an intention to use it in a different sense. Such persons as are authorized to vote for officers, and only such, are authorized to vote for other objects.

The certificate itself is erroneous in not setting forth, as it ought to do, that a majority of the taxable inhabitants of the district consented to the alteration. Not merely a majority of those present at a meeting are required to consent, but a majority of all entitled to vote. Whether such a majority did in fact vote for the change does not appear. The proceedings and certificate, purporting to alter the district, must therefore be quashed, and held for nothing.

HAINES, J. At a meeting of the taxable inhabitants of school district No. 5, at Oakhill, in Middlesex, a resolution was passed to divide the district, under the provisions of the tenth section of the act to essablish public schools. *Pamph. L.* 1851, *p* 270. One hundred and twenty-five votes were cast, eighty-one in the affirmative, and forty-four in the negative. Of the affirmative votes, fifty were cast by aliens, persons residing within the district, and subject to taxation but not naturalized, and thirty-one by persons qualified to vote at the ordinary elections. Of the negative vote, forty-two were by legal voters, and two were not ; so that by counting the votes of the aliens, the majority was in favor of dividing the district, but by rejecting them, the majority was against the division.

The question thus presented is, have aliens a right to vote in the meetings to abolish or alter a school district ?

The section of the act under which these proceedings were held provides, that wherever the trustees of any school district shall become incorporated, the said district shall not be abolished or altered without the consent of a majority of the taxable inhabitants of said district.

The solution of the question depends upon the meaning of the term taxable inhabitants. In seeking the intention of the legislature by the signs most natural and probable, if we resort to the words used we get but little light ; for

the usual and most known signification of the words taxable inhabitants would include every person dwelling within the district who is subject to taxation. By such construction, minors, single women, and negroes, who have property subject to be taxed, could vote; and married women with separate estates, might cast their votes: and such clearly was not the intention of the legislature.

But an examination of the context affords more satisfaction. By the sixth section of the act, it is enacted that the inhabitants of the several townships in this state shall be authorized, at their annual town meetings, to raise by tax, or otherwise, in addition to the amount apportioned to their use, such further sum of money as they may deem proper for the support of public schools, not exceeding three dollars for each child.

Now here the inhabitants of the township are authorized to exercise one of the first and most important functions of government, the imposition of taxes. We would hesitate long before we would believe that the legislature meant to confer such power upon foreigners, and we would surely never so believe, unless constrained by the force of the language used.

But this power to raise money for schools is to be exercised at the annual town meetings; and hence it must be inferred that such persons only can exercise it as are authorized to vote generally at such meetings.

It cannot be that one class of persons, with certain qualifications, can vote at the town meetings for officers of the township or county, and another class, with other qualifications, at the same meeting, are to vote to raise money by tax.

The fifth section of the act relating to townships declares that no person shall vote at the town meetings, unless he is entitled to the right of suffrage under the constitution; that is to say, unless he is a white male citizen of the United States. Hence the term inhabitants of the

township, used in the sixth section, means legal voters, persons entitled to the right of suffrage under the constitution, white male citizens of the United States.

By the same course of reasoning, it is not difficult to conceive that by the term inhabitants, used in the eighth and tenth sections of the act, the legislature meant to give the same signification as was given to it in the sixth section. Where the same word is used in the same act, it is to be presumed, unless the contrary clearly appears, that the same thing is meant.

And if it stood alone we would at once say the meaning is the same. But it is qualified by the word taxable. Does that qualifying word limit or extend the right to vote? It certainly cannot be construed as extending the right of suffrage, and bestowing it upon those who were otherwise without it.

The payment of taxes confers no such qualifications. Aliens are required to pay taxes for the support of the government, and in so doing they render but a just equivalent for the immunities they enjoy and for the protection of their persons and property; and yet they are not thereby qualified to vote.

If the word taxable extends the privilege of voting at such school district meetings to aliens, then it must extend it alike to minors and females and negroes.

But it is clearly a limitation of the right. All persons entitled to vote are not taxable. The act concerning taxes, approved on the same day with that concerning public schools, exempts from taxation the polls of revolutionary soldiers and of persons who by reason of age, infirmity, or poverty are, in the judgment of the commissioners of appeal, unable to pay taxes. And it may be that the legislature meant to exclude such persons from those who might vote at such school meetings.

One of the rules for the construction of statutes is, that statutes *in pari materia* must be construed with reference

to each other. What is clear in one statute may be called in to aid what is obscure or ambiguous in another. And this rule will embrace constitutional provisions as well as legislative enactments.

It may be affirmed, as an established rule, that no one, unless authorized by statute, can lawfully exercise any function of the government of a state or kingdom who is not in allegiance to it. They who are in allegiance are citizens or subjects—all others are aliens.

At the time of the adoption of the first constitution of New Jersey, the people had not usually been called citizens, in the sense now applied to that term. They had generally been called and treated as subjects of the king of Great Britain. But the framers of that constitution meant to secure the right of suffrage to all who were in allegiance to the government of the colony ; and, to express their intention, they declared that all the inhabitants of this colony of full age, who are worth fifty pounds proclamation money clear estate in the same, and shall have resided in the county where they claim a vote for twelve months immediately preceding the election, shall be entitled to vote.

Hence the term inhabitants, in connection with the qualifications of property and residence, clearly meant those persons who were subsequently called citizens. And the act of 16th November, 1807, re-enacted June 1, 1820, providing that no one shall vote in any state or county election, unless such person be a free white male citizen of this state, are but declaratory of the first constitution.

In the declaration of independence, promulgated two days after the adoption of our constitution, the word people is used as synonymous with the word citizens.

In recounting the usurpations of the king of Great Britain, it says : " He has refused to pass other laws for the accommodation of large districts of people, unless

those people would relinquish the right of representation in the legislature."

Here the word people means those who claimed the right of representation, and consequently of suffrage.

Again it says: "He has constrained our fellow citizens taken captive upon the high seas to bear arms against their country."

The term fellow citizens, thus used, as clearly means some of those very people who had offended their sovereign by daring to claim the right of representation and of suffrage.

Again.   The articles of confederation of the states, adopted in 1778, uses the word inhabitant as synonymous with the word citizen ; and, in the fourth article, it is declared that the free inhabitants of each of these states shall be entitled to all privileges and immunities of free citizens of the several states.

The constitution of the United States afterwards, in defining the qualifications of the representatives in congress, uses the term citizens of the United States, a term then in more frequent use and more generally understood.

Thus it is manifest that, in relation to the exercise of the functions of government, the word people, inhabitants, and citizens were frequently used as convertible terms.

And the language of the present constitution of this state, in limiting the right of suffrage to citizens of the United States, does no more or less than did the first constitution in giving it to the inhabitants in this state, that is to persons in allegiance to the government.

It is true the word inhabitants is sometimes used to signify not the citizens of a state, but those who merely dwell within it.   Thus, in the act concerning townships, the fourth section speaks of freeholders and inhabitants who are entitled to vote at town meetings, distinguishing between those who may merely dwell in a township and those who are entitled to vote in it ; but where used in

connection with the exercise of the right, it means legal voters, and they must be citizens.

If the words citizens and inhabitants are ever used as synonymous, they must be so regarded in the section of the act under consideration.

The legislature meant to limit the power of raising money for schools, and of abolishing or dividing or altering districts, to those legal voters who are taxable and dwell within it. And the expression, taxable inhabitants, is appropriate. It is concise and comprehensive, and, in view of preceding legislation and its former use, is just as clearly understood as if it had been taxable legal voters dwelling within the district.

There are other reasons for the same conclusion, which it is not necessary for me to pursue. The result, in my opinion, is that aliens are not authorized to vote for abolishing or altering a school district, and the resolution and proceedings of the district No. 5, at Oakhill, removed here, must be set aside and vacated.